IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DEREK HAMILTON,

    Plaintiff,

v.                                                                                                           No. 13-cv-0018 SMV/KK

MICHAEL ALLEN and PRICE TRUCK LINE, INC.,

    Defendants.

### MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court[1] on two dispositive motions filed by Defendants: **(1) Defendants' Motion for Partial Summary Judgment Regarding Plaintiff's Low Back Injury** [Doc. 71], filed on November 5, 2013; Plaintiff's Response [Doc. 77], filed on December 6, 2013; and Defendants' Reply [Doc. 89], filed on December 20, 2013; and **(2) Defendants' Motion in Limine to Exclude Evidence of Plaintiff's Six Percent Impairment Rating from Dr. Crawford** [Doc. 72], filed on November 5, 2013; Plaintiff's Response [Doc. 78], filed on December 6, 2013; and Defendants' Reply [Doc. 87], filed on December 20, 2013. The Court heard oral argument on the motions on November 18, 2014. Having considered the motions, briefing, oral argument, record, and relevant law, and being otherwise fully advised in the premises, the Court finds that the motions are not well-taken and should be denied.

---

[1] On September 4, 2014, the parties consented to the undersigned's entering final judgment in this case. [Docs. 98, 99]. Accordingly, the case was assigned to me on September 19, 2014. [Doc. 100].

**Background**

This case arises from a collision between two tractor-trailers on Interstate 25, north of Las Vegas, New Mexico, on January 31, 2011. [Doc. 1] at 1–2. Defendant Allen's tractor-trailer rear-ended Plaintiff's tractor-trailer. *Id.* at 2–4. Plaintiff claims to have suffered a low back injury[2] as a result of the collision. [Doc. 1] at 5. His treating chiropractor, Dr. Robert Jones, initially diagnosed the low back injury as thoracic sprain/strain. [Doc. 77-2] at 5. A subsequent magnetic resonance imaging ("MRI") revealed a herniated disc. *Id.* at 6; [Doc. 77-7] at 2. Plaintiff consulted Dr. Mark Crawford, an orthopaedic surgeon, for the herniated disc. [Doc. 77-7] at 2. Dr. Crawford operated to remove the damaged portion of the disc. After Plaintiff had reached maximum improvement, Dr. Crawford gave Plaintiff a 6% permanent impairment rating as a result of the accident. *Id.* at 6–7.

### I. Defendants' Motion for Partial Summary Judgment Regarding Plaintiff's Low Back Injury [Doc. 71]

Defendants' Motion for Partial Summary Judgment Regarding Plaintiff's Low Back Injury [Doc. 71] will be denied. Plaintiff has presented evidence upon which a reasonable jury could rely in finding a causal connection between the accident and his low back injury. *See* [Doc. 77-2] at 4–5 (transcript of Dr. Jones' deposition at 26:5–26:19; 31:9–31:20; 32:8–33:17). It is not this Court's role to weigh the evidence. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986) (citations omitted). Rather, the *jury* will determine what weight, if any, to accord the evidence. At this stage of the proceedings, there is a genuine issue of fact as to

---

[2] Plaintiff also claims that his ankle was injured in the accident. However, the two motions addressed by this Memorandum Opinion and Order concern only the low back injury.

2

whether the accident contributed to Plaintiff's low back problems and, if so, to what extent. Therefore, summary judgment is not appropriate.

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party" regarding that issue. *See Liberty Lobby, Inc.*, 477 U.S. at 248. A fact is material only if it "might affect the outcome of the suit under the governing law." *Id.*

When a party moves for summary judgment, he bears the initial burden of showing what parts of the record demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). Once the movant meets this burden, Rule 56 requires the nonmoving party to designate specific facts showing that there is a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324; *Liberty Lobby*, 477 U.S. at 256. It is not enough for the party opposing a properly supported motion for summary judgment to "rest upon mere allegation or denials of his pleadings . . . ." *Liberty Lobby*, 477 U.S. at 256. Nor can a party avoid summary judgment by repeating conclusory allegations, opinions unsupported by specific facts, or speculation. *MacKenzie v. Denver*, 414 F.3d 1266, 1273 (10th Cir. 2005). To deny a motion for summary judgment, genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Liberty Lobby*, 477 U.S. at 250. A mere "scintilla" of evidence will not avoid summary judgment. *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir. 1993). "If the evidence is merely colorable, or is not significantly

probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249 (citations omitted).

When reviewing a motion for summary judgment, courts should keep in mind three principles. First, the court's role is not to weigh the evidence, but to assess the threshold issue of whether a genuine issue exists as to material facts requiring a trial. *See id.* Second, the court must resolve all reasonable inferences and doubts in favor of the nonmoving party and construe all evidence in the light most favorable to the nonmoving party. *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999); *Liberty Lobby*, 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). Third, the court cannot decide any issues of credibility. *Liberty Lobby*, 477 U.S. at 255.

B. Analysis

Defendants move for summary judgment on Plaintiff's claim for damages related to his low back injury. [Doc. 71]. Defendants argue that they are entitled to summary judgment on the low back issue because there is no evidence of a causal connection between the accident and Plaintiff's low back problems. [Doc. 71] at 8 (citing *Manouchehri v. Heim*, 1997-NMCA-052, 123 N.M. 439).

In response, Plaintiff cites to deposition testimony from Dr. Jones that Plaintiff's low back injury was caused by the accident. [Doc. 77-2] at 4–5 (transcript at 26:5–26:19; 31:9−31:20; 32:8–33:17). Defendants challenge this evidence. [Doc. 89] at 2. They argue, "Plaintiff's doctors simply cannot make the causal connection between the accident [and Plaintiff's low-back injury because] Plaintiff never provided either doctor with the necessary information to support such a causal connection." [Doc. 89] at 2. Defendants argue that because

Plaintiff did not give the doctors "complete information," the doctors' opinions as to causation are invalid. *Id.* at 3. Specifically, Defendants argue that Dr. Jones' opinion is invalid because Plaintiff never told Dr. Jones that he had experienced back pain during a trip to Arizona and Texas and while sweeping his trailer, which would tend to show that his back problems were triggered on that trip or while sweeping, rather than by the accident. *Id.* at 2–3. The Court is not persuaded by Defendants' argument.

At his deposition, Dr. Jones gave the following testimony:

> **Q. The next diagnosis you had at your initial intake was thoracic sprain and strain; is that correct?**
> A. That's correct.
> **Q. Do you know what the—were you able to determine the mechanism of injury for his thoracic—or his alleged thoracic injury?**
> A. I think that my answer to all his injuries are going to be exactly the same as for his—the answer I gave for the ankle.
> **Q. That's okay.**
> A. He was in a vehicle where there were forces that were transferred, and he was a part of that mechanism. And so forces went through his body, and that's going to create tissue trauma. And that's what I believe is the origin of all his injuries.
> . . . .
> **Q. But in this case, you referred Mr. Hamilton to Dr. Crawford. So what was different about his situation?**
> A. When I was continuing to treat him, I was concerned about disc pathology, and so I sent him for an MRI. And that was confirmed on MIR. And the disc pathology was of the type that I didn't feel that conservative care would help. We had an extrusion, and there was placement on a nerve. When it gets—when the disc pathology is that bad, I think it's very prudent to have a surgical consultation, which I recommended for him, and he went and had that.
> . . . .
> **Q. So you didn't have—Mr. Hamilton didn't come to you and complain, you know, Dr. Crawford hurt my back more; you know, I didn't like him? Did you receive any complaints from Mr. Hamilton about Dr. Crawford?**

> A. The only thing that I've—no, I have not heard—I don't recall him saying anything derogatory about Dr. Crawford personally. When he came in—the last time I saw him was March 11th.
>
> **Q. Of this year?**
>
> A. Yeah. It had been awhile since I'd seen him. And he came in with some return of right lumbar radicular pain and also left lumbar radicular pain. So at that time, I took an X-ray to see what was going on, if there was anything I could see on there that might give us a thing [sic]. And I did write down that there was anterolisthesis present at L5-S1, which I believe is degenerative in etiology. That's what I wrote. And I thought that was the cause of what was going on.
>
> **Q. That was in March of this year?**
>
> A. Yes, March 11th, 2013.
>
> **Q. Do you believe that that was caused by the accident involving my client?**
>
> A. Do I believe this is going on? Absolutely. I think this is—once you've had an injury or a derangement of the disc in the manner which Derek had, he's going to have ongoing complaints all his life. He's going to have episodes where his pain is going to come and go. He's going to have accelerated degeneration. He's going to have not only accelerated degeneration in this area, but because of the altered mechanics of the body, he's going to have altered degeneration in other parts of the body, as far down as his hips and knees, as well as through the spine. And, again, I think that's well established in the literature.

[Doc. 77-2] at 5, 6 (transcript at 26:5–26:19; 31:9–31:20; 32:8–33:17). Reviewing the evidence in the light most favorable to Plaintiff, a reasonable jury could determine that Dr. Jones' testimony establishes a causal connection between the accident and Plaintiff's low back injury. There is other evidence tending to show no such causal connection exists. But it is not this Court's role to weigh the evidence. *Liberty Lobby*, 477 U.S. at 249 (citations omitted). That is the jury's role. At this stage of the proceedings, there is a genuine issue of fact as to whether the accident caused Plaintiff's low back problems. Therefore, Defendants' Motion for Partial Summary Judgment Regarding Plaintiff's Low Back Injury [Doc. 71] will be denied.

## II.  Defendants' Motion in Limine to Exclude Evidence of Plaintiff's 6% Impairment Rating from Dr. Crawford [Doc. 72]

Dr. Crawford testified at his deposition that Plaintiff has a 6% permanent impairment as a result of the accident. Defendants challenge that testimony under *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579 (1993). However, Defendants arguments go to the weight of Dr. Crawford's testimony rather than to its admissibility. Accordingly, the Court will deny the motion in limine.

### A.  Motion in Limine Standard

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony and provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> **(b)** the testimony is based on sufficient facts or data;
> **(c)** the testimony is the product of reliable principles and methods; and
> **(d)** the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. This rule incorporates the principles of *Daubert*, 509 U.S. 579, and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), to ensure that proffered expert testimony, even non-scientific and experience-based expert testimony, is both relevant and reliable. *See* Fed. R. Evid. 702 advisory committee's note on 2000 amendments.

*Daubert* challenges, like other preliminary questions of admissibility, are governed by Federal Rule of Evidence 104. *United States v. Turner*, 285 F.3d 909, 912–13 (10th Cir. 2002). To determine whether an expert opinion is admissible, the district court performs a

7

two-step inquiry: (1) whether the expert is qualified by knowledge, skill, experience, training, or education to render an opinion, and (2) if the expert is so qualified, whether the expert's opinion is reliable and helpful under the principles set forth in *Daubert*. *See 103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006). Pursuant to *Daubert*, courts measure the reliability of scientific evidence by considering a number of nonexhaustive factors, including: (1) whether the expert's technique or theory can be and has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error of the technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) the general acceptance of the methodology in the relevant scientific community. *See Kumho Tire*, 526 U.S. at 149-50; *103 Investors*, 470 F.3d at 990 (citing *Daubert*, 509 U.S. at 593–94). The *Daubert* Court emphasized that the focus must be solely on the principles and methodology, not on the conclusions they generate. *Daubert*, 509 U.S. at 595. *Daubert*'s general holding setting forth the judge's gate-keeping obligation applies not only to testimony based on scientific knowledge, but also to testimony based on technical or other specialized knowledge. *Kumho Tire*, 526 U.S. at 141.

Trial courts have broad discretion in determining the admissibility of expert testimony. *See United States v. Velarde*, 214 F.3d 1204, 1208 (10th Cir. 2000) (court's admission of expert testimony is reviewed for abuse of discretion). The court's discretion is equally broad in both deciding how to assess an expert's reliability, including what procedures to use in making that assessment, and in making the ultimate determination of reliability. *Id.* at 1208−09. A district court need not hold a *Daubert* hearing to perform its gatekeeping function, so long as the court has sufficient evidence to perform the task of ensuring that an

expert's testimony is both relevant and reliable. *Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000). The district court, however, has no discretion as to the actual performance of its gate-keeping function. *Turner*, 285 F.3d at 913.

> The Federal Rules encourage the admission of expert testimony. 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 702.02[1], at 702-5 (Joseph M. McLaughlin, ed., Matthew Bender 2d ed. 2012). The *Daubert* Court recognized the "liberal thrust" of the Federal Rules and their "general approach of relaxing the traditional barriers to 'opinion' testimony." *Daubert,* 509 U.S. at 588, 113 S.Ct. 2786 (internal quotation marks omitted). "The presumption under the Rules is that expert testimony is admissible." 4 Weinstein & Berger, *Weinstein's Federal Evidence* § 702.02 [1], at 702-5. "**A review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule.**" Fed. R. Evid. 702 advisory committee's note to 2000 amendment. As the Advisory Committee explained, "'**the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system**.'" *Id.* (quoting *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1078 (5th Cir. 1996)). "As the Court in *Daubert* stated: '**Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence**.'" *Id.* (quoting *Daubert*, 509 U.S. at 596, 113 S.Ct. 2786). **These conventional devices, rather than exclusion under the restrictive and elevated standard set by *Frye*, are "the appropriate safeguards where the basis of scientific testimony meets the standards of Rule 702**." *Daubert*, 509 U.S. at 596, 113 S.Ct. 2786. "As the ultimate fact-finder, it is the jury that must determine, finally, where the truth in any case lies, and the district judge as gatekeeper may not usurp this function." *United States v. Frazier*, 387 F.3d 1244, 1272 (11th Cir. 2004).

*United States v. McCluskey*, 10-cr-2734 JCH, [Doc. 1045] at 18–19 (emphases added).

9

B.  <u>Analysis</u>

Defendants argue that Dr. Crawford's 6% impairment rating is "not based upon sufficient facts or data, and his testimony is not the product of reliable principles and methods." [Doc. 72] at 1.  Specifically, Defendants complain that Dr. Crawford:

- failed to take into account Plaintiff's pre-existing and subsequent health histories;
- failed to take into account "the mechanism of injury";
- did not discuss the any events of the accident in his initial consultation with Plaintiff;
- based the impairment rating solely on information provided by Plaintiff during his visits with the doctor;
- was not aware (because Plaintiff concealed) that Plaintiff had injured his lower back previously, in 2008;
- cannot determine the exact time when Plaintiff's lower back vertebral disc was herniated.

[Doc. 73] at 4–5.  Ultimately, Defendants complain that Dr. Crawford's impairment rating does not take into account any of the circumstances that Defendants believe undercut Plaintiff's position.  *Id.* at 5.

Plaintiff responds that Dr. Crawford is an experienced orthopaedic surgeon who completes about 100 worker's compensation evaluations of back and spine injuries per year. Plaintiff also points out that Dr. Crawford utilized the American Medical Association's ("AMA") Guide to Evaluation of Permanent Impairment, 6th ed. in arriving at his opinion regarding Plaintiff's 6% impairment. [Doc. 78] at 3–4.  The legitimacy of the AMA's Guide was approved by the New Mexico Supreme Court in *Madrid v. St. Joseph Hospital*, 1996-NMSC-064, 122 N.M. 524 (NMSC 1996). [Doc. 78] at 8−9.  Accordingly, Plaintiff argues that Dr. Crawford's opinion is admissible under Fed. R. Evid. 702.  *Id.*

Defendants reply that the AMA guidelines required Dr. Crawford to consider all circumstances pertinent to the injury, including those that Defendants believe undercut Plaintiff's position. [Doc. 87] at 2–3. Defendants argue that because Dr. Crawford did not consider these circumstances, his impairment rating is not the product of reliable principles and methods and should be excluded under Rule 702. *Id.* at 6. The Court disagrees.

Defendants' arguments for excluding Dr. Crawford's opinion are more appropriate for cross-examination than for a motion in limine. Defendants do not challenge Dr. Crawford's qualification as an expert witness. Nor do they challenge the reliability of the AMA's Guide to Evaluation of Permanent Impairment. Rather, Defendants ask the Court to exclude Dr. Crawford's opinion on the impairment rating because they are dissatisfied with his consideration (or lack thereof) of evidence that they consider to be helpful to their case. Although Defendants couch their argument as a challenge to the reliability of the principles and methods utilized by Dr. Crawford—indeed they argue that the applicable AMA guidelines required Dr. Crawford to consider this evidence—the Court is not persuaded. Defendants' arguments may have merit in terms of what weight, if any, the jury should give Dr. Crawford's opinion. However, they do not make his opinion inadmissible. The motion in limine will be denied.

### III. Conclusion

The Court finds that there is a genuine issue of material fact regarding whether the accident at issue in this case caused Plaintiff's low back problems. Therefore, the motion for partial summary judgment should be denied. The Court further finds that Defendants' arguments

for excluding Dr. Crawford's opinion are more appropriate for cross-examination, rather than a motion in limine.  Thus, the motion in limine should be denied.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Defendants' Motion for Partial Summary Judgment Regarding Plaintiff's Low Back Injury [Doc. 71] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion in Limine to Exclude Evidence of Plaintiff's Six Percent Impairment Rating from Dr. Crawford [Doc. 72] is **DENIED.**

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**